UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MELISSA R. CODY,                              )
                                             )
Plaintiff,                                   )
                                             )
v.                                           )
                                             )        Case No. 4:17-CV-378-SPM
                                             )
                                             )
NANCY A. BERRYHILL,[1]                        )
Acting Commissioner of Social Security,      )
                                             )
Defendant.                                   )

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of

Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the

application of Plaintiff Melissa R. Cody ("Plaintiff") for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, (the "Act"). The parties

consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

(Doc. 8). Because I find the decision denying benefits was supported by substantial evidence, I

will affirm the Commissioner's denial of Plaintiff's application.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 2013, Plaintiff applied for DIB, alleging that she had been unable to work

since January 1, 2009. (Tr. 242-48). Her application was initially denied. (Tr. 133-38). On March

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d)
of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting
Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken
to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42
U.S.C. § 405(g).

3, 2014, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 141-42). On December 24, 2015, after two hearings, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 19-37). On December 19, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's hearing testimony, work, history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts relevant to the issues presented in the parties' briefs, as needed, in the discussion section below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an

adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III.    THE ALJ'S DECISION

Applying the foregoing five-step procedure, the ALJ here found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2009, through her date last insured of December 31, 2014; that Plaintiff had the severe impairments of a mood disorder, an anxiety disorder, a personality disorder, and obesity (as well as several non-severe impairments); and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 21-26). The ALJ found that through Plaintiff's last date insured, she had the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), except that she was limited to work that involved only simple, routine tasks and simple work-related decisions; to work involving only occasional interaction with the public, coworkers, and supervisors; and to low-stress work, defined as work involving only occasional decision making and occasional changes in a routine work setting. (Tr. 26). The ALJ found that Plaintiff was unable to perform any past relevant work but that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as sorter,

housekeeper cleaner, and produce weigher. (Tr. 35-36). The ALJ concluded that Plaintiff was not under a disability, as defined by the Act, at any time from January 1, 2009, through December 31, 2014.

## IV.  DISCUSSION

Plaintiff raises three arguments in support of her claim: (1) that the ALJ violated 20 C.F.R. § 404.1520a and Social Security Ruling 96-3p by failing to identify which of Plaintiff's mental health diagnoses constituted severe impairments; (2) that the ALJ violated 20 C.F.R. § 404.1521 and Social Security Ruling 85-15p by failing to perform a careful evaluation of Plaintiff's impairments found to be "not severe"; and (3) that the ALJ failed to make an RFC finding that was supported by substantial evidence on the record as a whole.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court

finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Identification of Plaintiff's Severe Mental Health Impairments

Plaintiff's first argument is that the ALJ did not adequately identify all of Plaintiff's severe mental health impairments, in violation of 20 C.F.R. § 404.1520a and Social Security Ruling 96-3p. Plaintiff points out that she was diagnosed with multiple "mood disorders" and "anxiety disorders" during the relevant period: major depressive disorder, bipolar II disorder, mood disorder NOS, posttraumatic stress disorder, anxiety disorder NOS, OCD, personality disorder NOS, and personality disorder. She asserts that the ALJ's failure to state specifically which mood disorder(s) and anxiety disorder(s) he found severe resulted in a failure to make findings concerning the severity of each of her mental health impairments and the limitations arising from those impairments.

In determining the severity of a claimant's mental impairments at Step Two, the ALJ must use the "special technique" described in 20 C.F.R. § 404.1520a.[2] The ALJ must first "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the clamant has] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). The ALJ must then "rate the degree of [the claimant's] functional limitation resulting from the impairment(s)" in four broad functional areas. § 404.1520a(b)(2) & (c)(3). The four broad functional areas are activities of daily living; social functioning; concentration, persistence, or pace, and episodes of decompensation. § 404.1520a(c)(3). "If [the ALJ] rate[s] the degree of [the claimant's] limitation

---

[2] The Court's references in this section are to the version of the regulations that was in effect as of the date of the ALJ's decision.

in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." § 404.1520a(d)(1). *See also* Social Security Ruling 96-3p, 1996 WL 374181, at *1 (July 2, 1996) ("The evaluation of whether an impairment(s) is "severe" that is done at step 2 of the applicable sequential evaluation process . . . requires an assessment of the functionally limiting effects of an impairment(s) on an individual's ability to do basic work activities . . ."). The ALJ performed that analysis in this case, considering all of Plaintiff's mental symptoms and impairments collectively, and found that Plaintiff did have severe mental impairments of a mood disorder, an anxiety disorder, and a personality disorder. (Tr. 22-25).

The ALJ's decision to analyze the severity of Plaintiff's mental impairments by considering all of her mental symptoms together, rather than performing a separate analysis of each diagnosed mental impairment in the record to determine whether it was severe, does not require remand, for several reasons. First, Plaintiff does not cite any authority that actually requires the ALJ to separately analyze each individual mental impairment in the record to determine whether each one is "severe." As noted above, both the relevant regulations and the Social Security Rulings relied on by Plaintiff are written in terms of analyzing the claimant's mental "impairment(s)" (rather than "each impairment"), and thus appear to welcome a comprehensive analysis of a claimant's mental symptoms in evaluating the severity of a claimant's mental impairments. Plaintiff cites no case law or other authority to support her position that the ALJ was required to perform a separate analysis of each diagnosed mental impairment.

Second, it is not at all clear to the Court how the ALJ could have done what Plaintiff appears to believe he should have done. As the Commissioner points out, unlike the differences

between a broken arm and a sprained ankle, the differences between mental disorders and the symptoms they cause may be unclear. Plaintiff's medical records indicated that she experienced (at various points) symptoms that included fatigue, racing thoughts, poor concentration, rapid speech, difficulty sleeping, decreased energy, depression, and anger outbursts. Plaintiff's treatment providers generally did not specify which of Plaintiff's mental symptoms arose from which of her diagnosed mental impairments, and it is not at all clear how the ALJ would have made such determinations. The ALJ properly analyzed all of Plaintiff's mental symptoms together throughout his analysis, regardless of the specific diagnosis associated with those symptoms. *Cf. Harris v. Astrue*, No. 4:10-CV-2198 CEJ, 2012 WL 785493, at *7 (E.D. Mo. Mar. 9, 2012) ("As in many disability cases, the cause of plaintiff's alleged disability is not necessarily the underlying conditions themselves, but rather the symptoms associated with the conditions.").

Finally, even assuming *arguendo* that he ALJ somehow erred by failing to conduct a separate severity analysis for each of Plaintiff's specific mental diagnoses, any such error was harmless because it had no impact on the ALJ's finding that Plaintiff was not disabled. Where, as here, the ALJ finds in a claimant's favor at Step Two by finding *any* severe impairment, the ALJ must proceed with the next step in the disability evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). In determining the claimant's RFC later in the five-step process, the ALJ must consider the limitations caused by *all* of the claimant's impairments, both severe and non-severe. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). That is what the ALJ did here. The ALJ specifically noted that the effects Plaintiff's non-severe impairments would have on her ability to function were to be considered in formulating the RFC.

(Tr. 24, 35). The ALJ conducted a comprehensive review of Plaintiff's medical records and discussed all of Plaintiff's mental symptoms and limitations, regardless of which specific mental impairment or impairments caused them, and he incorporated the limitations he found credible into the RFC. (Tr. 24-35). On this record, any failure to include a specific mental impairment in his list of severe impairments was harmless. *See, e.g.*, *Givans v. Astrue*, No. 4:10-CV-417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. March 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC). Notably, Plaintiff does not identify any mental limitations that the ALJ did not adequately account for in the RFC as a result of the manner in which he conducted the Step Two severity analysis, nor does she explain how the outcome of this case might have been in any way different had the ALJ identified additional severe mental impairments at Step Two.

For all of the above reasons, Plaintiff's first argument is without merit.

### C.  The ALJ's Evaluation of Plaintiff's Impairments Deemed "Not Severe"

Plaintiff's second argument is that the ALJ erred by failing to perform a careful evaluation of Plaintiff's impairments he found to be "not severe," in violation of 20 C.F.R. § 404.1521 and Social Security Ruling 85-15p. The ALJ found that Plaintiff had the following non-severe impairments: thyroid disease with mild thyroid eye disease and related tachycardia, asthma/chronic obstructive pulmonary disease, degenerative disc disease of the lumbar spine/sciatica, early sensorimotor polyneuropathy, mild carpal tunnel syndrome, a history of colon polyps and hemorrhoids, insomnia, a history of high-functioning Asperger's syndrome, and all other conditions mentioned in the evidence of record not listed as severe in his decision. (Tr. 22).

The ALJ found those impairments non-severe because "they do not cause significant limitation in the claimant's ability to perform basic work activities and/or do not meet the 12-month durational requirement to be considered severe impairments." (Tr. 22). Plaintiff notes that the ALJ is required to consider the effects of all of Plaintiff's impairments, severe and non-severe, on her ability to perform basic work activities. She argues that the ALJ's wording makes it unclear whether the ALJ found that Plaintiff's non-severe conditions did not cause significant limitations or found that they did not meet the durational requirement. In particular, she points out that ALJ failed to explain why he found her insomnia to be non-severe, noting evidence in the record showing that Plaintiff had nightmares and difficulty sleeping.

The Court finds no error that requires remand. As with Plaintiff's first argument, any lack of clarity about why the ALJ found certain impairments not severe had no impact on the disability determination. The ALJ found that Plaintiff had some severe physical and mental impairments, and then (as he was required to do) he proceeded to consider the limiting effects of *all* of Plaintiff's impairments, both severe and non-severe, in determining Plaintiff's RFC. (Tr. 24-35). With regard to Plaintiff's insomnia, the ALJ did not ignore its effects simply because he did not find it severe; instead, he discussed her sleep problems at several points in his decision. (Tr. 30-31). Even assuming that the ALJ erred by not finding insomnia to be a severe impairment, such error was harmless in light of the fact that he found other severe impairments and considered Plaintiff's sleep problems in his RFC analysis. *See, e.g.*, *Givans*, 2012 WL 1060123, at *17.

For the above reasons, Plaintiff's second argument is without merit.

### D. The RFC Finding

Plaintiff's final argument is that the ALJ's RFC finding was not supported by substantial evidence. Plaintiff also asserts that the RFC was not supported by medical evidence and that the ALJ erred in his assessment of the medical opinion evidence in the record.

A claimant's RFC is "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). Thus, although the ALJ is not limited to considering medical evidence, "some medical evidence 'must support the determination of the claimant's residual functional capacity, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Hutsell*, 259 F.3d at 712 (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).

In determining Plaintiff's RFC, the ALJ conducted a review of Plaintiff's testimony and medical records, conducted an analysis of the credibility of her subjective complaints, and analyzed each of the medical opinions in the record. (Tr. 26-35). The ALJ concluded that Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), except that she was limited to work that involved only simple, routine tasks and simple work-related decisions; to work involving only occasional interaction with the public, coworkers, and supervisors; and to

low-stress work, defined as work involving only occasional decision making and occasional changes in a routine work setting. (Tr. 26-35).

After review of the record, the Court finds substantial evidence in the record as a whole, including medical evidence, to support the ALJ's RFC finding. The ALJ's finding that Plaintiff could perform the physical requirements of light work is supported by consultative examiner Dr. John Demorlis's opinion that he "didn't find anything physically wrong with [Plaintiff]"(Tr. 691); by Dr. Demorlis's opinion that Plaintiff could lift up to ten pounds frequently and 20 pounds occasionally (Tr. 692); by Plaintiff's own testimony that although she has some back problems, hemorrhoids, and glaucoma, her "back is not a big problem for [her] overall" (Tr. 68); by Plaintiff's testimony that her physical problems are "extenuating stuff" and that "none of that is as severe as the mental problems" (Tr. 69); and by the absence of medical records indicating that Plaintiff sought treatment for significant and ongoing physical symptoms.

Plaintiff suggests that the ALJ erred by giving "significant weight" to Dr. Demorlis's opinion while not including certain limitations in Dr. Demorlis's medical source statement. Specifically, Plaintiff notes that Dr. Demorlis completed a medical source statement in which he indicated that Plaintiff could only occasionally climb stairs and ramps, stoop, kneel, crouch, crawl, and push/pull with her left hand, and could only frequently reach. (Tr. 694-95). The Court acknowledges that in some cases, remand may be required where an ALJ gives significant weight to a consulting physician's medical opinion, yet excludes some of the limitations in that opinion without explanation, if those limitations are otherwise supported by the record. *See, e.g.*, *Murphy v. Colvin*, No. 1:15-CV-00131-AGF, 2016 WL 4158868, at *7 (E.D. Mo. Aug. 5, 2016) (remanding where the ALJ stated that he "accepted" the opinion of a consulting physician because it was "grounded in the evidence of record," yet did not give any reason for disregarding parts of

that opinion; noting that the ALJ's error could not be overlooked given that there appeared to be ample evidence in the record to support the physician's opinion). Here, however, the limitations in Dr. Demorlis's medical source statement were not otherwise supported by the record. Although the Medical Source Statement invited him to identify the particular medical findings that formed the basis for the limitations he identified in the check-box portion of the form, he did not do so, nor did his narrative report or examination findings indicate a basis for the limitations he identified. In his examination, Dr. Demorlis noted that Plaintiff "moves around easily," that she had no sensory loss, that she had normal grip strength, that she could do a full squat and walk on heels and toes, and that her gait was normal. (Tr. 689-90). Plaintiff did not seek treatment for physical problems on an ongoing basis, and Plaintiff does not identify evidence in the record to support a finding that Plaintiff is limited in her ability to push, pull, climb stairs or ramps, kneel, crouch, crawl, or reach. Because these limitations were not supported by the record, the ALJ committed no reversible error by not including them in the RFC.

The Court next turns to the ALJ's mental RFC findings. As a preliminary matter, the Court notes that the ALJ did include significant mental limitations in Plaintiff's RFC, limiting Plaintiff to simple, routine tasks; simple work-related decisions; work involving only occasional interaction with the public, coworkers, and supervisors; and low-stress work, defined as work involving only occasional decision making and occasional changes in a routine work setting. After review of the record as a whole, the Court finds that this RFC is supported by substantial evidence. The mental RFC is supported by the opinion of state agency psychological consultant Stanley Hutson, Ph.D., which the ALJ gave "significant weight." (Tr. 34). Dr. Hutson opined that Plaintiff had moderate limitations in the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or in proximity with others without being distracted by them; the

ability to get along with the general public, supervisors, and coworkers; and the ability to respond appropriately to changes in the work setting. (Tr. 125-26). However, he also found that she could understand, remember, and carry out simple and detailed instructions, could complete tasks, could manage brief social interactions, and could adapt to a work situation. (Tr. 125-27). This opinion supports the ALJ's RFC finding that Plaintiff could perform simple, low-stress work involving only limited interactions with others.

The mental RFC finding is also supported in part by the opinion of consultative examiner Thomas J. Spencer, Psy. D., who found Plaintiff would have only mild limitations in the ability to understand, remember, and carry out simple instructions, but would have moderate difficulties in the ability to interact appropriately with others and marked difficulties in ability to respond appropriately to usual work situations and changes. (Tr. 702-03). The ALJ gave this opinion only "some weight," because Dr. Spencer's opinions appeared to be based in part on Plaintiff's subjective reports. (Tr. 33). This partial discounting was appropriate, particularly in light of the ALJ's assessment of the credibility of Plaintiff's complaints, discussed *infra*. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that an ALJ was entitled to give less weight to a treating physician's opinion that "was based largely on [the claimant's] subjective complaints rather than on objective medical evidence."). Despite the ALJ's partial discounting of this opinion, the ALJ largely accounted for the limitations in Dr. Spencer's opinion by limiting Plaintiff to simple, low-stress work involving limited interactions with others and only occasional changes in a routine work setting. (Tr. 33).

The mental RFC finding is further supported by the ALJ's assessment of the credibility of Plaintiff's subjective complaints, which included a detailed analysis of Plaintiff's testimony, mental health treatment records, and work history. When evaluating the credibility of a plaintiff's

subjective complaints, the ALJ must consider several factors, including the following: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of [the symptoms]; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Here, the ALJ considered several of these factors, as well as other relevant factors, in finding not Plaintiff's complaints of mental symptoms not fully credible.

First, the ALJ reasonably pointed to numerous inconsistencies in the record that significantly undermined the credibility of Plaintiff's subjective complaints. (Tr. 30-31). At the hearing before the ALJ, Plaintiff testified that she was limited by several mental symptoms, including crying, anger outbursts, racing thoughts, difficulty concentrating, and difficulty sleeping. (Tr. 60-62, 72, 76-77, 81). She testified that at times her condition has been "near insanity," and she gave as an example that "one time [she] tried to drive [her] car into a different dimension and landed airborne in some trees." (Tr. 62). Plaintiff also testified that when she is not on medication, she "was getting so bad [she] was stripping [her] clothes and—outside and was just screaming." (Tr. 64). However, although Plaintiff's treatment notes and mental status examinations certainly show that Plaintiff had depression, anxiety, anger, insomnia, and concentration problems, they also consistently show that Plaintiff was generally cooperative, had logical and reality-based thought processes and speech, and denied hallucinations and delusions. (Tr. 471, 500-01, 536, 571, 593, 595, 597, 601, 603, 605, 612, 622-23, 628-29, 717). This objective medical evidence is at least in part inconsistent with the extreme mental and behavioral issues Plaintiff described in her testimony. The ALJ also reasonably noted several other inconsistencies in the record that that

diminished Plaintiff's credibility, including inconsistent statements regarding her drug and alcohol use; inconsistent statements about the reasons why she left the Navy; inconsistent characterizations of her computer skills; and inconsistent statements about her relationships with her family members. (Tr. 27-29). It was appropriate for the ALJ to consider all of these inconsistencies in finding that Plaintiff was "less than a consistent historian who is prone to hyperbole and exaggeration" and in partially discrediting her subjective complaints of mental symptoms. (Tr. 34). *See Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) (noting that an ALJ may consider "inherent inconsistencies or other circumstances" in assessing credibility of subjective complaints) (quotation marks omitted); *Rogers v. Astrue*, 479 F. App'x 22, 23 (8th Cir. 2012) (affirming the ALJ's decision and noting that the ALJ had discounted the plaintiff's credibility based on inconsistent statements the plaintiff had made); *Ply v. Massanari*, 251 F.3d 777, 779 (8th Cir. 2001) (noting that inconsistencies in the plaintiff's statements were a factor for the ALJ to consider in assessing the plaintiff's credibility).

Second, the ALJ considered that Plaintiff's reported symptoms and course of treatment did not support her allegations of disabling mental limitations. (Tr. 30-32). As the ALJ noted, Plaintiff alleged disability from early 2009 through December 2014, yet Plaintiff received no mental health treatment for a period of four years between 2008 and 2012, and then again received no mental health treatment for a period of six months in 2014. (Tr. 30-31). Indeed, the bulk of Plaintiff's mental health treatment records are dated *after* December 31, 2014, her date last insured. The ALJ reasonably found that the lack of mental health treatment during much of the alleged disability period undermined her allegations of disabling mental impairments during that time period. (Tr. 30-31). *See Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination of credibility due in part to "failure to diligently seek medical care"); *Singh v. Apfel*,

222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegation of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment . . . .").

Third, the ALJ reasonably considered evidence that medication was at least partially effective in controlling Plaintiff's symptoms. (Tr. 31-32, 35). Specifically, Plaintiff reported that Seroquel and Trazadone improved her condition. (Tr. 64, 595, 601, 603, 612, 620-21, 634). To the extent that her mental impairments were controlled by medication, they cannot support a finding of disability. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

Fourth, the ALJ reasonably considered evidence related to Plaintiff's work history that indicated that her impairments were not as limiting as she claimed. As the ALJ noted, Plaintiff worked at times during alleged disability period, including a three-week period in which Plaintiff earned nearly $5000 as a technical writer. (Tr. 31-32, 56-57). Notably, Plaintiff testified that that job ended because the funding ran out; she did not testify that her alleged disability rendered her unable to perform the job. (Tr. 57). *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) ("Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition."). *See also* 20 C.F.R. § 404.1571 (work that a claimant "[has] done during any period in which [she] believe[s] [she is] disabled may show that [she is] able to work at the substantial gainful activity level.").

Plaintiff argues that the ALJ should have given greater weight to some of the medical opinions in the record other than the opinions of Dr. Hutson and Dr. Spencer. Specifically, Plaintiff argues that the ALJ should have given more weight to the opinion of her treating psychiatrist, Dr. Efosa Airuehia. On March 27, 2015, Dr. Airuehia filled out some interrogatories abut Plaintiff.

(Tr. 586-88). Dr. Airuehia stated that Plaintiff's diagnoses were PTSD and Bipolar II Disorder. (Tr. 586). Asked whether it would be necessary for Plaintiff to take more than a morning break, noon lunch break, and afternoon break, he stated, "It is possible she may require extra breaks. Her mental illness infers she may have episodes of being unstable which may require not just more breaks, but perhaps a few days off." (Tr. 586). Asked whether she could be expected to miss all or part of two or more days per month due to her medical condition, he stated, "This is possible. She may miss 2 days or more per month if she has a relapse." (Tr. 587). When asked whether her condition would interfere with her "ability to accept instructions and respond appropriately to criticism from supervisors," Dr. Airuehia stated, "This would depend on how stable she is at the time." (Tr. 588). The ALJ discussed these opinions and gave them "some weight." (Tr. 32).

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2).[3] *See also Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal quotation marks omitted); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). The ALJ may discount a treating physician's opinion if it is inconsistent or contrary to the medical evidence as a whole. *Halverson v. Astrue*, 600 F.3d 922,

---

[3] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c.

929-30 (8th Cir. 2010). However, "[w]hen an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)). *See also* 20 C.F.R. § 404.1527(c)(2) (stating that the Social Security Administration "will always give good reasons in [the] notice of determination or decision for the weight [it] gives [the claimant's] treating source's medical opinion").

The Court finds that the ALJ gave good reasons, supported by substantial evidence, for partially discounting Dr. Airuehia's opinion. The ALJ noted that Dr. Airuehia had seen Plaintiff only on three occasions (all of which were in early 2015, after the disability period ended). (Tr. 32). The length and frequency of a treatment relationship are proper factors to consider in weighing a medical opinion. 20 C.F.R. § 404.1527(c)(2)(i). *See also Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (finding the ALJ reasonably discounted the opinion of a treating physician and reasoning in part that the physician "had only met with [the claimant] on three prior occasions" when he offered the opinion). The ALJ also properly noted several findings in Dr. Airuehia's treatment notes that appear to be inconsistent with his opinions. (Tr. 32). Although Dr. Airuehia noted that Plaintiff complained of sleeping poorly and sometimes being stressed out, he also consistently found that Plaintiff had a good mood; good eye contact; good rapport; normal speech; an affect that was euthymic, stable, and mood congruent; goal-directed and logical thought; no formal thought disorder or psychotic symptoms; reasonable attention and concentration; reasonable judgment; and fair insight. (Tr. 631-32, 634-35, 637-38). Dr. Airuehia also noted that Plaintiff was happy with her medication and did not see the need to make any changes. (Tr. 634). These mild or normal findings were not consistent with the significant limitations Dr. Airuehia's opinion, and it was proper for the ALJ to consider them in discounting this opinion. *See Halverson*,

600 F.3d at 930 ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.") (quotation marks omitted). Finally, the ALJ reasonably noted that Dr. Airuehia's opinions were "very conditional" and "indicate that the claimant could work in the right, stable situation." (Tr. 32). The ALJ reasonably accounted for Plaintiff's need for a stable situation by limiting her to simple, routine tasks, to low-stress work with only occasional changes in a routine work setting, and to work involving limited interactions with others. The Court therefore finds no error in the ALJ's assessment of Dr. Airuehia's opinion.

Plaintiff also suggests that the ALJ should have given more weight to the opinion of consultative examiner Diane White, M.A. (an opinion that was reviewed and signed by Steven B. Adams, Psy. D.), that Plaintiff did not seem to be able to interact in moderately demanding social situations and did not seem to be able to adapt to a typical work environment. (Tr. 710). The ALJ gave this opinion limited weight because it was a one-time evaluation that was based largely on Plaintiff's subjective complaints. (Tr. 34). As discussed above with respect to Dr. Spencer's opinion, this was reasonable, particularly in light of the ALJ's assessment of the credibility of Plaintiff's complaints. *See Kirby*, 500 F.3d at 709. In addition, the Court notes that the ALJ partially accounted for the limitations in Ms. White's opinion by limiting Plaintiff to simple, low-stress jobs involving limited interactions with others. The Court finds no error in the ALJ's evaluation of this opinion.

For all of the above reasons, the Court finds that the ALJ did not err in his evaluation of the medical evidence and that the RFC is supported by substantial evidence on the record as a whole. After discussing at length all of the opinion evidence and the medical treatment notes in the record and conducting a credibility analysis, the ALJ properly incorporated into the RFC those limitations that he found credible and supported by the record. The Court acknowledges that the

record contains conflicting evidence, including medical opinion evidence, regarding the extent of Plaintiff's mental limitations. However, "it is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The ALJ's decision fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

Finally, Plaintiff suggests that the ALJ's finding at Step Five that there are other jobs Plaintiff can perform is not supported by substantial evidence. However, this argument is entirely premised on Plaintiff's position that the RFC was not supported by substantial evidence, a position the Court has rejected. At the hearing, the ALJ described to the vocational expert a hypothetical individual had all of the limitations in Plaintiff's RFC, and the vocational expert testified that such a hypothetical individual with Plaintiff's work experience could perform jobs such as sorter; housekeeper, cleaner; and produce weigher. (Tr. 36, 110-11). Testimony from a vocational expert based on a properly-phrased hypothetical that includes all of Plaintiff's limitations constitutes substantial evidence at Step Five, and the ALJ properly relied on this testimony. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

## V.  CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the

Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of March, 2018.